IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-36 |
| | ) | (VARLAN/GUYTON) |
| REGINALD L. HALL, ADVANCED | ) | |
| INTEGRATED MANAGEMENT SERVICES, | ) | |
| INC. ("AIMSI"), and DAVID F. REEDER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This cause came before the undersigned on various pretrial motions filed by the parties.

**I. MOTION FOR BILL OF PARTICULARS**

The defendants move for a bill of particulars [Doc. 16]. Count 1 of the indictment [Doc. 1] charges the defendants with conspiring to commit the following offenses: (1) mail fraud, in violation of 18 U.S.C. § 1341; (2) wire fraud, in violation of 18 U.S.C. § 1343; (3) theft of government property, in violation of 18 U.S.C. § 641; and (4) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Counts 2 through 5 charge the defendants with committing mail fraud; counts 6 through 15 charge the defendants with wire fraud; counts 16-26 charge the defendants with

theft of money of the United States in a value exceeding $1,000; counts 27-39 charge the defendants with engaging in money laundering; and count 40 charges the defendant Reginald L. Hall with obstruction of justice, in violation of 18 U.S.C. § 1503.

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the defendants ask [Doc. 16] the Court to order the government to provide a bill of particulars disclosing the following information with respect to count 1 of the indictment [Doc. 1]:

> 1. The specific "lavish lifestyles" and "personal business ventures" that are alleged to have been funded by "stealing, purloining and knowingly converting money and funds of the United States . . ."
>
> 2. The purchase orders and invoices alleged to have been fraudulent, as well as the specific overhead expenses and general administrative expenses that were paid or to be paid through U.T. Batelle, LLC;
>
> 3. The specific AIMSI checks alleged to have been deposited pursuant to the alleged conspiracy;
>
> 4. The specific checks that are alleged to have been prepared and the nature and definition of the "fictitious work" that is alleged;
>
> 5. The specific portion of AIMSI checks alleged to have been salary or payment for laundering of money;
>
> 6. The exact checks and amounts that the government alleges that Reginald Hall deposited into other persons' accounts for his own personal use and benefit;
>
> 7. The individuals other than the defendants herein that were known to the grand jury and are alleged to have committed or caused to be committed any of the overt acts listed, including all unindicted co-conspirators and those who were unknown to the grand jury but are now known by the prosecution, and the names of any employees, officers, stockholders or directors of AIMSI who are alleged to have been present when the defendants participated in the conspiracy; and

2

> 8. The government contract involved in overt acts 1 through 11
> and 13 through 27.

> With respect to counts 2-26, the defendants seek the following information:

> 1. The particular government contracts alleged to have been
> affected in each of these counts;

> 2. The specific government agency alleged to have been
> affected;

> 3. The amount of alleged increased overhead rate; and

> 4. The overhead rate that the government contends should have
> been charged to the government.

> With respect to counts 27-39, the defendants seek the following information:

> 1. The mail fraud, wire fraud and theft of government property
> that is alleged to have taken place in these three counts;

> 2. The number of the government contract and the specific
> government agency that the government alleges was affected by these
> payments; and

> 3. The names of any employee, officer, director or stockholder
> of AIMSI with whom it is alleged that the defendants devised a
> scheme to defraud.

[Doc. 16]. The government responds [Doc. 39], arguing that the indictment provides more than adequate information for each defendant to minimize surprise at trial, to assist each defendant in obtaining information necessary to prepare a defense, and to preclude a second prosecution for the same crime. The government further argues that it has complied with any reasonable discovery requests; that over 75 boxes of materials were made available as discovery to the defendants; that prior to the return of the indictment on April 5, 2005, the government provided the defendants with a compact disk that identified each of the money laundering transactions and included copies of the

3

documents that supported each step of the laundering activity; and that the government has also provided recordings and transcripts that it intends to use at trial.

>Federal Rule of Criminal Procedure 7(f) states that
>
>[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f). "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (citations omitted). The granting of a bill of particulars is within the court's discretion. See id. (holding that the appellate court reviews the denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other grounds by statute, United States v. Caseslorente, 2000 WL 0240P (6th Cir. July 20, 2000) (on sentencing issue).

With regard to count one, the defendants first seek the identify of the specific "lavish lifestyles" and "personal business ventures" alleged to have been funded by the defendants' conspiracy. The government responds that "lavish lifestyles" will include luxury automobiles, family "salaries" and maintenance of "mistress" Euricka Alugas to include living/automobile/financial support through AIMSI and others, and that "personal business ventures" will include music, business, and Euricka Alugas. The Court finds that the government
4

Case 3:05-cr-00036  Document 77  Filed 03/08/06  Page 4 of 19  PageID #: 8

documents that supported each step of the laundering activity; and that the government has also provided recordings and transcripts that it intends to use at trial.

> Federal Rule of Criminal Procedure 7(f) states that
>
> [t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f). "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (citations omitted). The granting of a bill of particulars is within the court's discretion. See id. (holding that the appellate court reviews the denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other grounds by statute, United States v. Caseslorente, 2000 WL 0240P (6th Cir. July 20, 2000) (on sentencing issue).

With regard to count one, the defendants first seek the identify of the specific "lavish lifestyles" and "personal business ventures" alleged to have been funded by the defendants' conspiracy. The government responds that "lavish lifestyles" will include luxury automobiles, family "salaries" and maintenance of "mistress" Euricka Alugas to include living/automobile/financial support through AIMSI and others, and that "personal business ventures" will include music, business, and Euricka Alugas. The Court finds that the government

has provided the information that the defendants request, and accordingly, the request for a bill of particulars regarding this issue is now moot.

Next, the defendants seek the identification of the purchase orders and invoices alleged to have been fraudulent; the specific overhead expenses and general administrative expenses that were paid or to be paid through U.T. Batelle, LLC; the specific AIMSI checks alleged to have been deposited pursuant to the alleged conspiracy; the specific portion of AIMSI checks alleged to have been salary or payment for laundering of money; and the exact checks and amounts that the government alleges that defendant Hall deposited into other persons' accounts for his own personal use and benefit. The government responds that these materials have already been provided to the defendants through discovery, and that further identification will be provided when completed summary charts are produced. Because these materials have already been provided, the defendants' request for a bill of particulars regarding these issues is not well-taken. See United States v. Graham, 487 F. Supp. 1317, 1320 (D.C. Ky. 1980) (denying bill of particulars where the information requested had already been provided by the government in discovery).

The defendants next request that the government specify whether it contends that the defendants' work was fictitious or that the work was performed by a company other than the company named in the particular purchase orders. The government responds by stating that it contends that the defendants' work was fictitious/fraudulent. The Court finds that the government has provided the requested information, and therefore, the defendants' request is now moot.

With respect to the overt acts alleged in count one, the defendants seek the identity of (1) the individuals that were known to the grand jury and are alleged to have committed or caused to be committed any of the alleged overt acts, including all unindicted co-conspirators, as well as

5

those who were unknown to the grand jury but are now known by the prosecution and (2) any employees, officers, stockholders or directors of defendant AIMSI who are alleged to have been present when the defendants participated in the conspiracy. The government responds to the first part of the defendants' request with a list of four unindicted co-conspirators. With respect to the second part of the defendants' inquiry, the government submits that this information is not subject to a bill of particulars. With respect to counts 27 through 39, the defendants seek the names of any employee, officer, director or stockholder of defendant AIMSI when it is alleged that these defendants devised a scheme to defraud. The government in response refers to the list of four unindicted co-conspirators it has produced.

> The Supreme Court has recognized that
>
> it is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial.

Will v. United States, 389 U.S. 90, 99 (1967). The Sixth Circuit has adopted a much more restrictive view and held that the government is not required to furnish the names of co-conspirators or other persons present when the defendant allegedly participated in the conspiracy:

> A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991) (citations omitted) (quoting United States v. Piccolo, 723 F.2d 1234, 1239 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984) (quoting United

6

States v. Davis, 679 F.2d 845, 851 (11th Cir.1982))); see also United States v. Ferguson, 460 F. Supp. 1, 4 (D.C. Tenn. 1977) (noting the departure of that court and recent case law from the Supreme Court's liberal construction in Will). Accordingly, the government is not required to produce the names of any unindicted co-conspirators or other persons present when the defendants participated in the conspiracy. Nevertheless, the government has provided the names of four alleged co-conspirators not charged in this indictment. The Court finds that count 1 and counts 27-39 as charged, in combination with the additional information provided by the government, sufficiently apprise the defendants of the charges that they are facing to permit them to prepare their defense, to avoid surprise at trial, and to protect against a double jeopardy violation.

With respect to overt acts 1-11 and 13-27, the defendants seek the identity of the government contract involved in each of these overt acts. Additionally, the defendants seek the identity of the specific government contracts and specific government agency allegedly affected in counts 2-26 and the number of the government contract and the specific government agency allegedly affected by the payments alleged in counts 27-39. The government responds that the government contracts involved are those contracts where AIMSI is a contractor/subcontractor to the United States during the time frame charged in the indictment (October 27, 1995 to on or about October 1, 2004).

"[A] defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d at 1375. Nevertheless, the Court notes that the indictment is quite detailed, setting forth 27 specific overt acts allegedly committed by the defendants. [Doc. 1 at 8-9]. "A court does not abuse its discretion by denying a bill of particulars in light of a detailed indictment." Salisbury, 983 F.2d at 1375. The Court finds that the indictment sufficiently informs the defendants of the nature of the conspiracy and how it was accomplished and that the overt acts

alleged are sufficiently detailed to give the defendants notice of the conduct with which they are being charged, especially in light of all of the documents already produced to the defendants in discovery.

The defendants further seek the amount of the alleged increased overhead rate and the overhead rate that the government contends should have been charged to the government. The government responds that the "billing" or provisional rate should have been reduced by the amount of U.S. funds stolen as charged in the indictment. The Court finds that counts 2 through 26 as charged, in combination with the information provided by the government, sufficiently apprises the defendants of the charges they are facing to permit them to prepare their defense, to avoid surprise at trial, and to protect against a double jeopardy violation.

With respect to counts 27 through 39, the defendants seek information regarding the mail fraud, wire fraud and theft of government property that is alleged to have taken place in these counts. The government contends that the requested information is not subject to a bill of particulars. The Court agrees. A bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." Salisbury, 983 F.2d at 1375.

For the foregoing reasons, the defendants' Motion for a Bill of Particulars [Doc. 16] is **DENIED**.

## II.  MOTION FOR DISCLOSURE OF 404(B) EVIDENCE

The defendants move [Doc. 21] the Court to order the government to provide at least 30 days before trial to the defendants the following information regarding each and every item of evidence that it intends to seek to introduce at trial under the authority of Rule 404(b) of the Federal Rules of Evidence:

> (a) Any and all factual details known to the government, as well as which details it will seek to introduce, as to each such "other act" or "other crime";
>
> (b) Whether the evidence will be introduced by means of a documentary exhibit and, if so, the identity of each exhibit and its availability for inspection and copying;
>
> (c) The name of any witness who will give testimony about the other act or crime and/or lay the foundation for the entry of any exhibit; and as to each such witness, a summary of their intended testimony;
>
> (d) Whether each such other act or crime is presently the subject of a pending charge or ongoing criminal investigation, and if so, whether the government intends to elicit this circumstance from any witness or through any exhibit; and
>
> (e) The element of the crime for which each such other act or crime is offered as proof, *i.e.*, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).

Additionally, with regard to the "Purpose of the Conspiracy" [Doc. 1 at 6], the defendants seek identification of the specific "lavish lifestyles" and "personal business ventures" that are alleged to have been funded by "stealing, purloining and knowingly converting money and funds of the United States . . . ."  For grounds, the defendants argue that these details are necessary in order to a fair determination of the issues in this case, to avoid undue surprise at trial, and to provide the Court the opportunity to make evidentiary rulings in a fair and informed manner.  [Doc. 21].

9

The government responds [Doc. 37] that it will provide notice of the general nature of any 404(b) evidence that it intends to introduce at trial one week before the date of trial, as provided for by the Order on Discovery and Scheduling [Doc. 8], entered on April 12, 2005. The government opposes earlier notice or the provision of more than the general nature of the 404(b) evidence. The government further asserts that it will endeavor to disclose any such evidence earlier as it becomes known and verified by the United States.

Rule 404(b) provides that upon the defendant's request, the government "shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). This Court's Order on Discovery and Scheduling [Doc. 8, para. I] states that "reasonable notice" under Rule 404(b) is deemed to be seven calendar days before trial unless the Court notes otherwise. The defendant has stated no compelling need for an earlier disclosure, and the Court finds no reason to disturb the seven-day time frame provided in the Order on Discovery and Scheduling.

With regard to the type of information the government must provide in its 404(b) notice, the Sixth Circuit has held that "government's notice must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature." United States v. Barnes, 49 F.3d 1144, 1148-49 (6th Cir. 1995). Such notice must be sufficiently clear so that the issue of its admissibility can be resolved pretrial. Id. at 1149. Furthermore, the Advisory Committee Notes to the rule confirm that the government must only provide general information in its notice:

> [N]o specific form of notice is required. The Committee considered and rejected a requirement that the notice satisfy the particularity requirements normally required of language used in a charging instrument. Instead, the Committee opted for a generalized notice

10

> provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure, such as the Jencks Act, 18 U.S.C. § 3500, et. seq. nor require the prosecution to disclose directly or indirectly the names and addresses of its witnesses, something it is currently not required to do under Federal Rule of Criminal Procedure 16.

Fed. R. Evid. 404(b), Advisory Committee Notes on 1991 Amendments (citation omitted).

Guided by the case law and the Advisory Committee Notes to the rule, the Court finds that the defendants are not entitled to the level of detail in the notice that they are requesting in their motion. Instead, the government is required to give notice of the general nature of any 404(b) evidence it intends to introduce at trial. If the defendants believe that the government is not entitled to introduce the evidence of which it gives notice, they may file a motion in limine seeking its exclusion. The government's response to such motion will inform the defendants of the theory or element which the government believes provides the basis for the evidence's admissibility under Rule 404(b) and whether the government intends to seek a ruling on the admissibility of any 404(b) evidence it may attempt to introduce. Thus, the Court finds that a general notice would not prevent the defendant from preparing to exclude the 404(b) evidence.

Accordingly, the defendant's Motion for Disclosure of any Rule 404(b) Evidence the Government Intends to Introduce at Trial [Doc. 21] is **DENIED** in light of the fact that the Order on Scheduling and Discovery [Doc. 8] already adequately provides for pretrial notice of the government's intention to introduce 404(b) evidence.

11

## III. MOTION TO SET DATE FOR RECIPROCAL DISCOVERY

The government moves the Court to set a date for reciprocal discovery by the defendants. [Doc. 33]. For grounds, the government states that it has met its discovery obligations under Rule 16(a), Fed. R. Crim. P., and that it has now made a request for reciprocal discovery pursuant to Rule 16(b). The defendants do not oppose setting a date for reciprocal discovery. [Doc. 44]. However, they argue that the process of identifying and producing reciprocal discovery would be greatly streamlined if counsel for the government would designate the specific documents intended for presentation during the government's case in chief.

Rule 16(a)(1)(E) requires the government, upon the defendant's request, to make available for inspection and copying documents and objects if such items are within the government's possession, custody or control and:

> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial;
> or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

The defendants have not cited any controlling authority from the Sixth Circuit in support of their argument for specific designation of documents to be used by the government in its case-in-chief, and the Court is not aware of any such authority. The Court does note that there appears to be some disagreement among the district courts as to whether the government is obligated to make a specific designation of such documents. Compare United States v. Laughlin, 768 F. Supp. 957, 967 (N.D.N.Y. 1991) (requiring government to identify for defendant's review those specific documents intended for use in case-in-chief); United States v. Poindexter, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (finding that government's identification of several thousand documents

12

that it "may" rely on trial insufficient to satisfy government's Rule 16 obligations); United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (requiring government to identify documents intended to be offered at trial) with United States v. Nachamie, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000) (finding that plain language of Rule 16 does not require government's identification of case-in-chief documents) and United States v. McDade, 1992 WL 382351, at *2 (E.D. Pa. 1992) (requiring government to identify only those documents that it plans not to use at trial).

In Nachamie, the district court denied the defendants' request for a more specific designation, stating as follows:

> Defendants correctly identify the difficult problem that arises when the Government amasses a large amount of documents "material to the preparation of the defendant's defense," and produces those documents at the same time it produces the documents it intends to use in its case-in-chief. Because the Government must produce documents meeting any of the three categories listed in Rule 16(a)(1)(C)[1], a defendant cannot determine which documents fall into each category. But a court has no license to rewrite the Federal Rules of Criminal Procedure. While it might be wise for the Advisory Committee on Criminal Rules to consider an amendment that would require a party to *identify* those documents it intends to use in its case-in-chief, no such requirement now exists in the plain language of the Rule. In the absence of any controlling authority interpreting the Rule as requiring this action, I cannot direct the Government, at this time, to identify the documents it intends to offer in its case-in-chief.

Nachamie, 91 F. Supp. 2d at 570.

The Court finds the rationale of Nachamie to be persuasive in the present case. Like the government in Nachamie, the government in the present case has complied with its obligation to produce documents pursuant to Rule 16(a)(1)(E). The Court finds nothing in the plain language

---

[1]This provision was renumbered 16(a)(1)(E) in 2002. See Fed. R. Crim. P. 16 Advisory Committee Notes, 2002 Amendments.

13

of that Rule that requires the government to identify the specific documents it intends to use in its case-in-chief. In light of the plain language of Rule 16(a)(1)(E), and the lack of any controlling authority requiring such identification, the Court finds that defendants' request for a more specific designation of documents is not well-taken and is therefore **DENIED**.

For good cause shown, the government's Motion to Set Date for Reciprocal Discovery [Doc. 33] is **GRANTED**. The defendants are hereby **ORDERED** to produce reciprocal discovery on or before **July 24, 2006**, the date of the pretrial conference in this matter.

### IV. MOTION TO ADMIT EVIDENCE UNDER RULE 902

The government moves the Court to admit certain bank records under Rule 902 of the Federal Rules of Evidence. Specifically, the government contends that it has notified the defendants that it intends to use these records in its case-in-chief, and that it has provided the affidavit and/or certification from the authorized representative of each bank, copies of which are attached to the government's motion. The government contends that these records are self-authenticating as "acknowledged documents" under Rule 902(8) and as records of "regularly conducted activity" that are accompanied by a written declaration of a custodian under Rule 902(11). [Doc. 34].

The defendants oppose the government's motion, arguing that the government has failed to comply with the requirements of Rule 902, that the government's request to admit such evidence is premature, and therefore an order or stipulation as to the admissibility of such evidence is inappropriate at this time. While the defendants state that they may consider a stipulation as to these financial records, they argue that the affidavits submitted are insufficient to properly certify

14

these records in accordance with Rule 902(11) and that the defendants must be advised of the specific documents provided by each individual, the date of production, and the documents' Bates stamp numbers. [Doc. 41].

In a supplemental motion [Doc. 47], the government argues that the affidavits are sufficient, and that these records were identified and made available in discovery in April, 2005. The government further states that it will work with the defendants toward a stipulation of the authenticity and admissibility of these records, and that if a stipulation cannot be reached, the appropriate affidavit will be submitted to the Court under Rule 902(11). [Doc. 47].

The Court agrees with the defendants that the government's motion appears to be premature; furthermore, the parties have agreed to work toward a stipulation of the authenticity and admissibility of these financial records. For these reasons, the Court finds that the government's Motion to Admit Evidence Under Federal Rules of Evidence 902 [Doc. 34] and its Supplemental Motion to Admit Evidence Under Federal Rules of Evidence 902 [Doc. 47] should be **DENIED** at this time.

### V. MOTION TO ALLOW 1006 SUMMARIES

The government moves for admission into evidence of Rule 1006 summary charts that the government intends to use during its case-in-chief and argument at trial. In its motion, the government states that it "is in the process of finalizing the charts to use at trial and will make them available to the defendants within the next thirty days with the supporting documentation." [Doc. 35]. The defendants oppose the government's motion, arguing that the government has not complied with the preliminary requirement for admission of such summaries and that the defendants have not

15

been provided the proposed charts. [Doc. 40]. In a supplemental motion [Doc. 48], the government argues that the defendants have been provided drafts of the charts. With respect to the admissibility of the underlying evidence, the government relies on its motion to admit evidence under Fed. R. Evid. 902 [Doc. 34].

The Court agrees that the government's motion is premature. The summary charts have not been completed, nor has the admissibility of the underlying documents been established. Accordingly, the government's Motion to Allow Rule 1006 Summaries [Doc. 35] and Supplemental Motion to Allow Rule 1006 Summaries [Doc. 48] are **DENIED**.

### VI. DEFENDANTS' MOTION FOR A <u>DAUBERT</u> HEARING

The defendants have filed a motion [Doc. 53], requesting a <u>Daubert</u> hearing to determine the reliability of the government's proffered expert witness, Alice C. Peterson, under Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. <u>Daubert</u>, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. <u>Id.</u> To aid the trial court in this gatekeeping role, the Supreme Court

16

has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94.

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153.

The Defendants' Motion for a Daubert Hearing [Doc. 53] is **GRANTED**. The Court conducted a Daubert hearing on January 5 and 20, 2006. After considering Ms. Peterson's opinions and the bases therefor as set forth in the government's expert disclosure [Doc. 46], her testimony at the Daubert hearing, and the other material filed by the parties with respect to this motion, the Court finds, and the defendants have stipulated, that Ms. Peterson is qualified to render opinions regarding government contracting procedures and the process by which certain claims are paid. The Court further finds that the government has demonstrated that Ms. Peterson has a reliable basis for her opinions on these issues. Ms. Peterson testified that she reviewed the indictment, the relevant terms and conditions of the contracts at issue, and some of the underlying documents related to the

17

financial transactions alleged in the indictment. She testified that she based her opinions on her review of these documents as well as her years of experience as a staff accountant with DOE and particularly her experience in dealing with government procurement contracts and the auditing of government contractors. Having found that Ms. Peterson is duly qualified and that her opinions are relevant and reliable, the Court will consider Ms. Peterson's opinions in ruling on the defendants' motions to dismiss the theft counts.

### VII. GOVERNMENT'S MOTION FOR A <u>DAUBERT</u> HEARING

The government moves the Court to hold a <u>Daubert</u> hearing and to exercise its gate keeping role with respect to any and all expert testimony to be offered by the defendant. [Doc. 62]. The defendants respond [Doc. 63] that a <u>Daubert</u> hearing is unnecessary, as the defendants are withdrawing their expert notice filed December 30, 2005, and will not be calling an expert to testify with regard to the issues surrounding the motions to dismiss. For these reasons, the Court finds that the government's Motion for a <u>Daubert</u> Hearing [Doc. 62] is moot, and it is therefore **DENIED AS MOOT**.

## VIII. MOTIONS TO ADOPT

The defendant AIMSI moves to adopt defendant Hall's Post-Hearing Brief Regarding the Failure of the Theft Allegations to State an Offense [Doc. 72], filed on February 8, 2006. [Doc. 73].[2] For good cause shown, the defendant AIMSI's motion to adopt [Doc. 73] is **GRANTED**.

The defendant David F. Reeder also moves to adopt the post-hearing brief of defendant Hall. [Doc. 74]. For good cause shown, defendant Reeder's Motion to Adopt Defendant Reginald L. Hall's Post-Hearing Brief Regarding the Failure of the Theft Allegations to State an Offense [Doc. 74] is **GRANTED**.

**IT IS SO ORDERED.**

**ENTER:**

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2]AIMSI's motion is titled "Motion to Adopt Defendants [sic] Hall's Response to the Government's Motion for a Daubert Hearing"; however, in the body of the motion, defendant AIMSI moves to adopt defendant Hall's post-hearing brief on the motion to dismiss the theft charges.