IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REGINALD L. HALL, ADVANCED )<br>INTEGRATED MANAGEMENT SERVICES, )<br>INC. ("AIMSI"), and DAVID F. REEDER, )<br>)<br>Defendants. ) | No. 3:05-CR-36<br>(VARLAN/GUYTON) |

**REPORT & RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter comes before the Court upon the defendants' oral request for a hearing pursuant to Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) to determine the admissibility of the testimony of the government's expert, Alice Peterson. The parties came before the Court for a <u>Daubert</u> hearing on September 28, 2006. The government was represented by Assistant United States Attorneys Guy W. Blackwell and Francis M. Hamilton, III; the defendant Reginald L. Hall was represented by attorneys W. Thomas Dillard and Wade V. Davies; and the defendant David F. Reeder was represented by attorney Douglas A. Trant. Attorney Nelson M. Jones, III was not present for the defendant Advanced Integrated Management Services, Inc. ("AIMSI"), but the Court was advised that neither he nor the other defendants objected to the hearing going forward without his presence.

At the conclusion of the hearing, the Court took the motions and related filings under

advisement and allowed the parties to file post-hearing briefs. The parties have now filed their briefs [Docs. 119, 120], and the Court finds that this matter is ripe for adjudication.

**I.     Standard for Admissibility of Expert Testimony**

The defendants challenge the qualifications and opinions of Alice Peterson under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the

2

correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1318 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153.

## II. Analysis

The defendants argue that Peterson's methodology of determining the percentage of AIMSI expenditures attributable to funds received pursuant to interim reimbursements on government cost contracts does not satisfy the Daubert standard of admissibility. Specifically, the defendants argue that Peterson's methodology has not been tested, has not been subjected to peer review, has no known error rate, and has not been shown to be accepted by a relevant scientific community. The defendants further contend that Peterson's methodology does not produce a reliable opinion as to whether money allegedly stolen on any given date, or any portion thereof, was government money. In support of this argument, the defendants point out that Peterson did not take

3

into account the source of money that was in AIMSI's bank account on the date of the individual transactions alleged in the Superseding Indictment.

The government counters that Peterson is well-qualified to provide opinions regarding the amount of interim reimbursements drawn from AIMSI's bank account and the tracing of those reimbursements from the government prime contractor to AIMSI's bank account. The government further argues that Peterson's conclusions are reliable and would be helpful to the trier of fact.

The defendants first argue that Peterson's testimony does not satisfy any of the key factors set forth in Daubert. Contrary to the defendants' argument, however, the fact that Peterson's methodology has not been tested, has not been subjected to peer review, has no known error rate, and has not been shown to be accepted by a relevant scientific community does not render her opinions unreliable and admissible. The Sixth Circuit has recognized that the factors used in Daubert have limited applicability to non-scientific expert testimony. See First Tennessee Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 334 (6th Cir. 2001); United States v. Jones, 107 F.3d 1147, 1158 (6th Cir. 1997). As the Sixth Circuit noted in Jones, "[i]f [the Daubert] framework were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded. Such a result truly would turn Daubert, a case intended to relax the admissibility requirements for expert scientific evidence, on its head." Jones, 107 F.3d at 1158. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Kumho Tire, 526 U.S. at 153.

In the present case, the Court finds that the enumerated <u>Daubert</u> factors are of limited assistance in assessing Peterson's expertise. Peterson's opinions are derived from her extensive experience as a Certified Public Accountant applying Generally Accepted Government Auditing Standards ("GAGAS"). <u>See</u> <u>Barreto</u>, 268 F.3d at 335 (finding opinions based upon forty years of experience in the banking industry "do not easily lend themselves to scholarly review or to traditional scientific evaluation"). Accordingly, the Court finds that the defendants' argument that Peterson's testimony lacks reliability simply because it does not satisfy the enumerated <u>Daubert</u> factors to be without merit.

The Court will next address Peterson's qualifications (1) to trace interim reimbursements drawn from AIMSI's prime contractor into the AIMSI bank account from which the checks identified in Counts 11 through 19 of the Superseding Indictment were drawn and (2) to quantify the amount of interim reimbursements withdrawn from AIMSI's bank account by the depositing of those checks. The defendants previously stipulated that Peterson is qualified to testify as an expert on government contracting procedures and the process by which certain claims are paid. [Doc. 77].

Peterson has been a licensed Certified Public Accountant since 1992. She has been a Senior Staff Accountant with the United States Department of Energy since 1987. From 1979 to 1987, she served as an auditor and contract finance specialist with the federal government. Since 2002, Peterson has served as Team Lead for DOE's Financial Accountability and Review Team. In that role, Peterson's duties include performing contract finance work relating to obtaining audits, formulating negotiation positions, negotiating indirect rates, and determining final allowable costs on contracts, grants, or other financial assistance awards; performing internal audits of various

financial, managerial, and program issues; providing advice to the contracting officer regarding allowable costs issues; and serving as financial/contract finance team member on investigations, requests for equitable adjustments on contractor claims, and Source Evaluation Boards and Panels. Given her knowledge, skill, training, education, and extensive experience as a Senior Staff Accountant with the Department of Energy, the Court finds that Peterson is qualified to provide expert testimony that traces the interim reimbursements from AIMSI's prime contractor into the AIMSI bank account and that further quantifies the amount of interim reimbursements withdrawn from AIMSI's bank account by the depositing of the checks identified in Counts 11 through 19 of the Superseding Indictment.

   Next, the Court will address the reliability of Peterson's opinions. The defendants argue that Peterson's methodology does not produce reliable opinions regarding whether money allegedly stolen on any given date, or any portion thereof, was government money. Specifically, the defendants argue that Peterson failed to take into account the source of money that was in AIMSI's bank account on the date of the individual transactions that are alleged in the Superseding Indictment. Further, the defendants challenge Peterson's reliance upon her review of the defendants' Deltek accounting system as a legally sufficient basis for tracing the disposition of funds.

   Peterson based her opinion regarding the amount of interim reimbursements drawn from AIMSI's bank account by the depositing of the checks identified in Counts 11 through 19 of the Superseding Indictment upon data generated by AIMSI's Deltek accounting software system, as well as upon financial data, including bank statements and payment vouchers. Peterson had specialized knowledge of AIMSI's accounting system from the Special Review that she conducted of the system in April 2002 in her capacity as a DOE Senior Staff Accountant. In performing this

6

audit of AIMSI's accounting system, which included transactional testing, Peterson followed Generally Accepted Government Accounting Standards ("GAGAS"), a methodology with which she had gained considerable experience prior to the AIMSI audit from more than 20 years of government contract auditing experience. Similarly, Peterson testified that she followed GAGAS in tracing the interim reimbursements from the government prime contractor to AIMSI's bank account.

Based upon the transactional testing performed on AIMSI's Deltek accounting system, Peterson was able to confirm that AIMSI's accounting system segregated revenue and costs by each contract under which AIMSI was performing. Specifically with respect to overhead costs, Peterson testified that the accounting system distributed these costs among all of AIMSI's contracts. Peterson's explanation of AIMSI's accounting system was confirmed by Schedule H-1 to AIMSI's Indirect Cost Submission for FY 2001 [Ex. 71F], which showed that 55.7% of overhead costs booked in FY 2001 were paid for with cost-contract derived interim reimbursement funds, and Schedule F-1 to AIMSI's Indirect Cost Submission for FY 2000 [Ex. 71E], which showed that 63.9% of overhead costs booked in FY 2000 were paid for with cost-contract derived interim reimbursement funds. Based upon her review of AIMSI's contracts for these fiscal years, however, Peterson determined that some of these contracts were misclassified as cost-type contracts. Accordingly, she reclassified these contracts as non-cost-type contracts and recalculated the overhead costs set forth in Schedule H-1 and Schedule F-1. Following her recalculations, Peterson determined that 52.8% of overhead costs booked in FY 2001 and 59.5% of overhead costs booked in FY 2000 were paid for with cost-contract derived interim reimbursement funds.

Once she calculated the interim reimbursement percentages, she applied these figures to the checks at issue in Counts 11 through 19 of the Superseding Indictment. First, she identified the overhead-related invoice that gave rise to each check and then determined the fiscal year in which that invoice was booked to an overhead account in the accounting system. Based upon the fiscal year of booking, Peterson then multiplied the amount of the check by the appropriate percentage to determine the dollar amount of interim reimbursements contained in each check.

With respect to tracing the interim reimbursements from AIMSI's prime contractor to AIMSI's bank account, Peterson followed GAGAS to tie the wire transfer numbers from AIMSI's bank statements to the specific payment voucher under which AIMSI was receiving the wired funds. Having identified the specific payment voucher, Peterson then isolated the dollar amount of funds that was transferred to AIMSI as interim reimbursements. Using this information, Peterson then juxtaposed the numerous dates of interim reimbursement transfers into AIMSI's bank account against the depositing of the subject AIMSI checks that were drawn on the same account. [Ex. 80].

Upon carefully reviewing Peterson's testimony and the record as a whole, the Court finds that the government has demonstrated the soundness of Peterson's methodology for determining the dollar amount of interim reimbursement funds contained in each check and for tracing interim reimbursements from AIMSI's prime contractor to AIMSI's bank account. The Court particularly finds that the government has demonstrated that Peterson's analysis of AIMSI's accounting system is a reliable basis for tracing the disposition of interim reimbursement funds. Further, the Court finds that the government has demonstrated that Peterson's testimony is relevant and will assist the trier of fact in determining whether the government has proven the asportation element of 18 U.S.C. § 641. While the defendants argue that Peterson's opinions are unreliable

because she was unable to identify the precise source of the funds in AIMSI's bank account on any given date, the Court finds that this is an issue that goes more to the weight and credibility of her testimony, not its admissibility. See Barreto, 268 F.3d at 333.

**III.     Conclusion**

For the foregoing reasons, the undersigned finds that Peterson's testimony satisfies the requirements for admissibility of expert testimony set out in Rule 702 of the Federal Rules of Evidence and Daubert. Specifically, the undersigned finds that: (1) Peterson is qualified to trace interim reimbursements from AIMSI's prime contractor into the AIMSI bank account from which the checks identified in Counts 11 through 19 of the Superseding Indictment were drawn; (2) Peterson is qualified to quantify the amount of interim reimbursements withdrawn from AIMSI's bank account by the depositing of those checks; (3) Peterson followed reliable methodologies in her tracing and quantification analysis; and (4) Peterson's opinions will assist the trier of fact deciding whether the government has proven the asportation element of the violations of 18 U.S.C. § 641 alleged in Counts 11 through 19 of the Superseding Indictment. Accordingly, it is

**RECOMMENDED** that the defendants' objections to Peterson's testimony be **OVERRULED** and their request for the exclusion of Peterson's testimony be **DENIED**.[1]

                                              Respectfully submitted,

                                                 s/ H. Bruce Guyton
                                             United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).